1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7

PREMO TRUDEAU,                          NO:  1:15-CV-03114-FVS

8

9                           Plaintiff,    REPORT AND RECOMMENDATION
                                         TO  DENY PLAINTIFF'S MOTION
                                         FOR SUMMARY JUDGMENT AND
10        v.                             TO GRANT DEFENDANT'S
                                         MOTION FOR SUMMARY
11   CAROLYN W. COLVIN,                   JUDGMENT

12                           Defendant.   ECF Nos. 14, 17

13

14        BEFORE THE COURT are the parties' cross motions for summary

15   judgment.  ECF Nos. 14, 17.  This matter has been referred to the undersigned

16   magistrate judge for issuance of a report and recommendation.  ECF No. 20.  The

17   Court, having reviewed the administrative record and the parties' briefing, is fully

18   informed.  For the reasons discussed below, **IT IS RECOMMENDED** Plaintiff's

19   Motion (ECF No. 14) be **DENIED** and Defendant's Motion (ECF No. 17) be

20   **GRANTED**.

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

1    the claimant's "residual functional capacity."  Residual functional capacity (RFC),

2    defined generally as the claimant's ability to perform physical and mental work

3    activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

4    404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the

5    analysis.

6        At step four, the Commissioner considers whether, in view of the claimant's

7    RFC, the claimant is capable of performing work that he or she has performed in

8    the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).

9    If the claimant is capable of performing past relevant work, the Commissioner

10   must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).

11   If the claimant is incapable of performing such work, the analysis proceeds to step

12   five.

13       At step five, the Commissioner considers whether, in view of the claimant's

14   RFC, the claimant is capable of performing other work in the national economy.

15   20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination,

16   the Commissioner must also consider vocational factors such as the claimant's age,

17   education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v);

18   416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

19   Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

20   404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other

1    work, analysis concludes with a finding that the claimant is disabled and is

2    therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

3           The claimant bears the burden of proof at steps one through four above.

4    *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

5    step five, the burden shifts to the Commissioner to establish that (1) the claimant is

6    capable of performing other work; and (2) such work "exists in significant

7    numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2);

8    *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

9                                   **ALJ'S FINDINGS**

10           Plaintiff applied for supplemental security income and disability insurance

11    benefits on October 24, 2011, alleging an onset date of August 1, 2008.  Tr. 206-

12    19.  At the hearing, the onset date was amended to April 1, 2011.  Tr. 35.  The

13    application was denied initially, Tr. 134-41, and upon reconsideration, Tr. 145-56.

14    Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on

15    October 21, 2013.  Tr. 32-93.  On December 9, 2013, the ALJ denied Plaintiff's

16    claim.  Tr. 15-31.

17           At step one, the ALJ found Plaintiff has not engaged in substantial gainful

18    activity since April 1, 2011, the amended alleged onset date.  Tr. 20.  At step two,

19    the ALJ found Plaintiff has the following severe impairments: bipolar disorder,

20    post traumatic stress disorder, and personality disorder.  Tr. 20.  At step three, the

ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment.  Tr. 22.  The ALJ then found that Plaintiff has the RFC

> to perform a full range of work at all exertional levels but with the following non-exertional limitations: he can understand, remember, and persist at simple repetitive tasks and semi-skilled tasks.  He can engage in limited superficial contact with the general public. He can work independently and alone but should not work at a job where he works in coordination with others.

Tr. 23.  At step four, the ALJ found Plaintiff is capable of performing past relevant work as a bottle packer, an agricultural produce sorter, a truck driver, cable television installer, and construction worker II.  Tr. 27.  On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from April 1, 2011, through at least the date of the decision.  Tr. 28.

On May 6, 2015, the Appeals Council denied review, Tr. 1-4, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 14.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed Plaintiff's symptom claims;

2. Whether the ALJ properly weighed the medical opinion evidence; and

3. Whether the ALJ properly assessed the RFC and considered testimony from the vocational expert at step four.

## DISCUSSION

### A. Adverse Credibility Finding

Plaintiff faults the ALJ for improperly discounting his symptom claims. [1] ECF No. 14 at 21-25.

---

[1] Plaintiff argues, in reply, that the ALJ erred by using "improper sub-regulatory guidance in evaluating [Plaintiff's] overall character in the manner typically used during an adversarial court litigation proceeding." ECF No. 18 at 3. Plaintiff's argument is based on Social Security Ruling ("SSR") 16-3p "Evaluation of Symptoms in Disability Claims" which became effective on March 16, 2016. *See* SSR 16-3p, *available at* 2016 WL 1119029 (March 16, 2016). The SSR supersedes SSR 96-7p, and, as highlighted by Plaintiff, it eliminates the term "credibility" from the Social Security Administration's policy, and clarifies that "adjudicators will not assess an individual's overall character or truthfulness." *Id*. at 1, 10. Here, the ALJ's decision came more than two years before SSR 16-3p, thus, she could not have applied the new SSR. There is no binding precedent interpreting the new ruling or indicating whether it applies retroactively; however,

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines

_____

Plaintiff does not make the specific argument that the new ruling should be applied retroactively in this case.  Moreover, Plaintiff does not argue with specificity that the ALJ's findings *in this case* are inadequate under the new standard, thus the Court declines to address this issue.  *See Carmickle*, 533 F.3d at 1161 n.2.

the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds the ALJ provided specific, clear, and convincing reasons for finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms "were not entirely credible." Tr. 24-26.

### 1. Failure to Pursue Treatment

First, the ALJ noted "that the [Plaintiff] did not receive the extent of medical treatment one would expect for a totally disabled individual." Tr. 24.

Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for an adverse credibility finding unless there is a showing of a good reason for the failure. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). However, an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." Social Security Ruling ("SSR") 96-7p at *7 (July 2, 1996), *available at* 1996 WL 374186. Here, in support of her finding, the ALJ relied on Plaintiff's failure to pursue medical treatment until November 2011;[2] his subsequent cancellations and failures to show up for appointments "on a number of occasions;" and his ultimate

_____

[2] Plaintiff argues the ALJ "erred in her factual findings" because Plaintiff was in treatment prior to November 2011. ECF No. 14 at 22. A review of the record does indicate that Plaintiff underwent an "assessment" in September 2011; an "evaluation" in October 2011; and had two treatment sessions in October 2011. Tr. 273-82, 288-91. However, any error by the ALJ in considering this evidence is harmless. *See Molina*, 674 F.3d at 1115 (error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination.").

failure to continue treatment as of June 2012.  Tr. 24.  At the hearing, Plaintiff

confirmed he stopped receiving medical treatment at that time, but testified he was

not pursuing treatment because he had no insurance.  Tr. 24, 59-60.  The ALJ

properly considered this explanation in the decision, and found "the record

indicates [Plaintiff] was discharged from CWCMH for not attending his

appointments and not for lack of insurance."  Tr. 24.  As noted by the ALJ, after

multiple warnings, Plaintiff was discharged from treatment due to cancellations

and failure to show for appointments for reasons, including: putting up a pool for

the kids, and building a fence.  Tr. 24, 331, 328.  At the time of his discharge,

Plaintiff also reported to his medical provider that he "did not have time to keep

running around;" did not feel he was getting better; and was "considering getting

his CDL for truck driving and that he could [sic] be on any medication."  Tr. 328.

Thus, the ALJ considered Plaintiff's explanation for his failure to pursue treatment,

and reasonably found it was not supported by the record.

　　　　Plaintiff also generally argues the ALJ's finding is "directly contrary to well-

established law in the Ninth Circuit."  ECF No. 14 at 22-24.  Plaintiff is correct

that the Ninth Circuit has generally found it inappropriate to consider a claimant's

lack of mental health treatment as evidence of a lack of credibility where the

evidence suggests lack of mental health treatment is part of the claimant's mental

health condition.  *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

1    However, when there is no evidence suggesting a failure to seek treatment is

2    attributable to a mental impairment rather than personal preference, it is reasonable

3    for the ALJ to conclude that the failure to seek treatment is inconsistent with the

4    severity of Plaintiff's claimed limitations.  *Molina*, 674 F.3d at 1113-14.  As

5    discussed above, Plaintiff missed multiple treatment appointments because he "did

6    not have time;" and reported he did not feel he was getting any better.  *See* Tr. 24,

7    331, 328.  Moreover, Plaintiff does not offer, nor does the Court discern, evidence

8    in the record that Plaintiff's failure to comply with treatment, and failure to pursue

9    mental health counseling, was specifically attributable to his alleged mental

10    impairments.  Thus, it was reasonable for the ALJ to consider Plaintiff's

11    inadequately explained failure to follow prescribed course of treatment in making

12    the adverse credibility finding.

13    *2.  Improvement with Treatment*

14    The ALJ noted that therapy and medication were "generally successful in

15    controlling [Plaintiff's] symptoms; and "[h]e endorsed the benefits of both his

16    medications and therapy."  Tr. 24.  An ALJ may rely on examples of "broader

17    development" of improvement when finding a claimant's testimony not credible.

18    *Garrison*, 759 F.3d at 1017-18.  Moreover, the effectiveness of medication and

19    treatment is a relevant factor in determining the severity of a claimant's symptoms,

20    20 C.F.R. § 404.1529(c)(3), 416.929(c)(3); *see Warre v. Comm'r of Soc. Sec.*

1   *Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled

2   with medication are not disabling for purposes of determining eligibility for

3   benefits) (internal citations omitted); *see also Tommasetti v. Astrue*, 533 F.3d 1035,

4   1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's

5   complaints of debilitating pain or other severe limitations).

6          Here, in support of this finding, the ALJ relied on Plaintiff's own reports of

7   improvement to his treatment providers.  In November 2011, he reported his

8   anxiety was "slightly better" and his medication "is helping him greatly and he is

9   very happy with this medication."  Tr. 24, 283.  He also noted he was "glad that he

10  finally came in for services."  Tr. 284.  In December 2012, he reported he went to

11  "counseling" at multiple points in his life, and reported it was "helpful."  Tr. 24,

12  294.  In January 2012, Plaintiff reported his sleep was improving, and his anxiety

13  had lessened.  Tr. 358.  In February 2012, Plaintiff "[appeared to have] made some

14  noticeable improvement in his anxiety, and perhaps slight improvement in his

15  depression today, though he is not yet endorsing it himself."  Tr. 357.  In March

16  2012, Plaintiff reported he was "feeling good and that he is not depressed."  Tr.

17  343.  In April 2012, a treatment provider noted he was "relatively stable" although

18  he had not made any "noticeable improvement;" then in May 2012, Plaintiff

19  reported his sleep was improving, he was not having nightmares, and being

20  physically active was helpful.  Tr. 329, 340.  The ALJ also noted that Plaintiff

"generally presented with some depressed mood and anxiety but had a pleasant and appropriate affect, good insight and judgment, no delusions or hallucinations, and no obvious impairment of memory or intellectual functioning." Tr. 24, 338, 346, 354-55, 361.

As an initial matter, the Court may decline to consider this reason as Plaintiff fails to raise it with specificity in his opening brief. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). Moreover, while the Court acknowledges evidence of Plaintiff's recurring complaints of mental health symptoms; the evidence as a whole is susceptible to more than one rational interpretation, and therefore the ALJ's conclusion must be upheld. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) ("[t]he ALJ is responsible for determining credibility"). And even assuming, *arguendo*, that the ALJ did err by failing to support this finding, any error is harmless because the ALJ's ultimate credibility finding is adequately supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

### 3. Daily Activities

Third, the ALJ found Plaintiff's "daily activities are not limited to the extent one would expect, given his complaints of disabling symptoms and limitations." Tr. 25. A claimant need not be utterly incapacitated in order to be eligible for

benefits.  *See Orn*, 495 F.3d at 639 ("the mere fact that a plaintiff has carried on certain activities…does not in any way detract from her credibility as to her overall disability.").  However, as in this case, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1113.

Here, Plaintiff testified he cannot work because of his "attitude" which has resulted in him being fired from multiple jobs.  *See* Tr. 46-67.  He also testified that he had hand impairments, including: nerve damage, a missing part of one finger, and psoriasis.  Tr. 61-63.  Plaintiff also claimed difficulties with focus and concentration; and, as noted by the ALJ, he "alleged difficulty leaving the home alone and stated that his anxiety diminished greatly when he was not in crowds."  Tr. 25 (citing Tr. 300).  However, as observed by the ALJ, Plaintiff has custody of and cares for his three children without any assistance.  Tr. 279, 296.  He reported doing all of the cooking for the family; as well as cleaning, laundry, washing dishes, yard work, erecting a pool for his children, and building a fence.  Tr. 69-72, 298, 328, 331, 333.  As noted by the ALJ, despite his claims of difficulty concentrating and alleged hand impairment, Plaintiff inconsistently reported that he could play video games with his son for hours at a time; as well as carving wood, drawing, gardening, canning, camping, and fishing.  Tr. 25, 71-72, 298, 345.

1    Plaintiff argues that the activities cited by the ALJ "were done in the safe

2  confines of [Plaintiff's] home, and do not translate into what one would find with

3  the demands of competitive work."  ECF No. 14 at 24.  However, while

4  transferability of daily activities to the work setting is a valid reason to discredit

5  Plaintiff's testimony; as noted above, it is equally reasonable for the ALJ rely on

6  the extent that Plaintiff's daily activities "contradict claims of a totally debilitating

7  impairment" to support an adverse credibility finding.  Moreover, the ALJ cites

8  numerous activities, in addition to those cited above, that did not take place

9  exclusively inside Plaintiff's home.  Tr. 25.  Most notably, his ability to complete

10  training to get his CDL and then work as a truck driver, which "indicates that his

11  daily activities were, at least at times, greater than he generally reported."  Tr. 25,

12  45-46.  In addition, despite "being socially withdrawn," Plaintiff has a fiancée he

13  sees every day, has driven his son to and from school, occasionally visits a friend,

14  attends school events with his children, goes to church, and has driven an 18-

15  wheeler cross-country.  Tr. 25, 46, 80-81, 299, 325.

16    Overall, even if the evidence of Plaintiff's daily activities may be interpreted

17  more favorably to the Plaintiff, it is susceptible to more than one rational

18  interpretation, and therefore the ALJ's conclusion must be upheld.  *See Burch*, 400

19  F.3d at 679.  Thus, Plaintiff's daily activities were reasonably considered by the

20  ALJ as inconsistent with his complaints of disabling symptoms and limitations.

1      *4. Reasons for Stopping Work*

2      Finally, the ALJ found "evidence that [Plaintiff] stopped working for

3  reasons not related to his impairments."  Tr. 25-26.  When considering a claimant's

4  contention that he cannot work because of his impairments, it is appropriate to

5  consider whether the claimant has not worked for reasons unrelated to his alleged

6  disability.  *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (the fact

7  that the claimant left his job because he was laid off, rather than because he was

8  injured, was a clear and convincing reason to find him not credible); *Tommasetti*,

9  533 F.3d at 1040 (the ALJ properly discounted claimant's credibility based, in part,

10 on the fact that the claimant's reason for stopping work was not his disability).

11 Here, in support of this reason, the ALJ cited evidence that Plaintiff was laid off

12 for reasons unrelated to his claimed limitations, including: lack of work; closure of

13 the business he worked for; inability to get along with his boss; and failure to

14 follow the rules.  Tr. 26, 46-50, 55, 244, 252.  Similarly, the ALJ cited evidence

15 that Plaintiff's "failure to return to work was related to reasons other than his

16 impairments," including: inability to get work because he was previously fired;

17 inability to get a physical to keep his CDL current; not being allowed to leave the

18 county due to a custody agreement; and felony convictions that prevented him

19 from being hired.  Tr. 26, 64-68, 292, 298, 358-59.

20

1    Plaintiff briefly contends that the ALJ "mischaracterized" the record by

2  "ignoring the fact that he lost his job because of his mental impairments and

3  problems with anger." ECF No. 14 at 25. However, the ALJ does acknowledge

4  that Plaintiff was fired in April 2011 due to a "fight with his boss." Tr. 26, 50-51.

5  Moreover, regardless of evidence that could be considered more favorable to the

6  Plaintiff, the ALJ cited substantial evidence to support her finding that reasons

7  given by Plaintiff for not working "are not medical reasons for an inability to work,

8  and I cannot consider those very real non-medical impediments to employment."

9  Tr. 26; *see Burch*, 400 F.3d at 679 (ALJ's conclusion must be upheld when

10  evidence is susceptible to more than one rational interpretation). This was a clear

11  and convincing, and largely unchallenged, reason for the ALJ to find Plaintiff not

12  credible.

13    The ALJ provided specific, clear and convincing reasons for rejecting

14  Plaintiff's symptom claims.

15  **B. Medical Opinion Evidence**

16    Next, Plaintiff faults the ALJ for discounting the treating medical opinions

17  of Debbi Spitler, PA-C and Peggy Champoux, MSW.[3]  ECF No. 14 at 12-16.

18

19  [3] The ALJ, and both parties' briefing, considered these opinions simultaneously.

20  The Court will do the same.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported

1  by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830–

2  831).

3       The opinion of an acceptable medical source such as a physician or

4  psychologist is given more weight than that of an "other source."  *See* SSR 06-03p

5  (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a).

6  "Other sources" include nurse practitioners, physician assistants, therapists,

7  teachers, social workers, and other non-medical sources.  20 C.F.R. §§

8  404.1513(d), 416.913(d).  The ALJ need only provide "germane reasons" for

9  disregarding an "other source" opinion.  *Molina*, 674 F.3d at 1111.  However, the

10  ALJ is required to "consider observations by nonmedical sources as to how an

11  impairment affects a claimant's ability to work."  *Sprague v. Bowen*, 812 F.2d

12  1226, 1232 (9th Cir. 1987).

13       In December 2011, Debbi Spitler, PA-C opined that Plaintiff was unable to

14  participate in work for an "unknown" period of time; and noted Plaintiff "has

15  extreme difficulty leaving his home and interacting with other people to a degree at

16  this time that would severely impact his ability to hold a job."  Tr. 316-18.  In

17  February 2012, Peggy Champoux, MSW diagnosed Plaintiff with post traumatic

18  stress disorder; and opined that he would be limited to working one to ten hours a

19  week for the period of six months.  Tr. 319-21.  Ms. Champoux also noted that

20  while Plaintiff "has difficulty being around [a] larger number of people in public

1    places;" it is not as difficult to be around "a few" people, and '[i]f the group is

2    small 4-6 people he could likely tolerate the situation." Tr. 319. The ALJ

3    accorded Ms. Spitler and Ms. Champoux's opinions "little weight." Tr. 27.

4    Because Ms. Spitler and Ms. Champoux are "other sources," the ALJ was required

5    to give germane reasons for giving their opinions little weight.

6        As an initial matter, the ALJ found that "as non-acceptable medical sources,

7    I afford their opinions and statements less weight than acceptable medical

8    sources." Tr. 27. Ms. Spitler is a physician assistant and Ms. Champoux is a

9    social worker, and thus in accordance with 20 C.F.R. § 416.913, the ALJ is correct

10   that they are not "acceptable" medical sources. "The fact that a medical opinion is

11   from an 'acceptable medical source' is a factor that may justify giving that opinion

12   greater weight than an opinion from a medical source who is not an 'acceptable

13   medical source.'" SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at

14   *5. However, as noted by Plaintiff, "depending on the particular facts in a case,

15   and after applying the factors for weighing opinion evidence, an opinion from a

16   medical source who is not an 'acceptable medical source' may outweigh the

17   opinion of an 'acceptable medical source.'" ECF No. 14 at 14-16 (citing SSR 06-

18   03p). Thus, while the ALJ may give less weight to these opinions because they are

19   not from an "acceptable medical source;" it would be error to reject them *solely* on

20   this basis. In this case, however, any error is harmless because the ALJ gave

1  several germane reasons for granting Ms. Spitler and Ms. Champoux's opinions

2  little weight.  *See Carmickle*, 533 F.3d at 1162-63.

3       First, the ALJ found the "'profound' symptoms and 'extreme' limitations

4  indicated [in these opinions] are inconsistent with the CWCMH treatment records

5  and those found by examining physician Dr. Dougherty."  Tr. 27.  The consistency

6  of a medical opinion with the record as a whole is a relevant factor in evaluating

7  that medical opinion.  *Orn*, 495 F.3d at 631; *see also Batson v. Comm'r of the Soc.*

8  *Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit medical

9  source opinions that are conclusory, brief, and unsupported by the record as a

10  whole, or by objective medical findings).  In support of this finding, the ALJ cited

11  Dr. Roland Dougherty's psychological evaluation of Plaintiff conducted in

12  February 2012.  Tr. 292-300.  Dr. Dougherty noted that Plaintiff's "social skills

13  appear to be rather poor at this time though he reports in the past he has done well

14  with others;" his thinking was logical and goal-directed; and Plaintiff believed he

15  could work full time at a job if "he did not have to interact much with others."  Tr.

16  300.  Dr. Dougherty opined that Plaintiff "should be able to understand, remember

17  and follow simple directions."  Tr. 300.  As noted by Defendant, the opinion of a

18  non-treating physician "may also serve as substantial evidence when the opinion[]

19  [is] consistent with independent clinical findings or other evidence in the record."

20  ECF No. 17 at 17 (citing *Thomas*, 278 F.3d at 957).

1    Plaintiff argues the ALJ's reasoning was "inconsistent with the evidence

2  with the evidence in the medical record, especially when considered in light of the

3  fact that the bulk of the record [the ALJ] refers to was established by [Ms. Spitler

4  and Ms. Champoux]." ECF No. 14 at 13-14.  Plaintiff references alleged

5  "extensive[] document[ation]" by these two medical providers of Plaintiff's

6  "declining mental state, fearing he was becoming psychotic."  ECF No. 14 at 13.

7  However, in support of this general assertion, Plaintiff only cites a single "medical

8  staffing note" written by Ms. Champoux to Ms. Spitler, that noted poor eye contact

9  and expressed "concern that there *could be* underlying psychotic process."  Tr. 335

10  (emphasis added).  Notably, this treatment record was from April 2012, which was

11  at least two months after the opinions at issue.  Tr. 335.  Moreover, treatment

12  records from May 2012 indicate Plaintiff was sleeping better, physical activity was

13  helping, he was not having nightmares, and he enjoyed going to a carnival.  Tr.

14  329.  Moreover, while the Court acknowledges evidence that Plaintiff consistently

15  presented with symptoms of depression and anxiety; as noted by the ALJ and

16  discussed in detail above, the overall medical record contained evidence that

17  Plaintiff was benefitting from medication and therapy.  Tr. 283-84, 294, 343, 357-

18  58.  Plaintiff also generally presented with pleasant and appropriate affect, good

19  insight and judgment, no delusions or hallucinations, and no obvious impairment

20  of memory or intellectual functioning.  Tr. 24, 338, 346, 354-55, 361.  Thus,

1    despite evidence in the record that could be considered more favorably to Plaintiff,

2    "where evidence is susceptible to more than one rational interpretation, it is the

3    [Commissioner's] conclusion that must be upheld." *Burch*, 400 F.3d at 679.  This

4    was a germane reason to grant little weight to Ms. Spitler and Ms. Champoux's

5    opinions.

6         Second, the ALJ found "[t]he severity of limitations was also out of

7    proportion to the [Plaintiff's] admitted activities of daily living and level of

8    functioning." Tr. 27.   An ALJ may discount a medical source opinion to the

9    extent it conflicts with the claimant's daily activities.  *Morgan v. Comm'r Soc. Sec.*

10   *Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).  As an initial matter, the Court may

11   decline to address this issue because it was not raised with specificity in Plaintiff's

12   opening brief.  *See Carmickle*, 533 F.3d at 1161 n.2.  Moreover, as noted by the

13   ALJ and discussed in detail above, Plaintiff's reported activities include custody of

14   and caring for his three children without any assistance.  Tr. 279, 296.  He also

15   reported doing all of the cooking for the family; as well as cleaning, laundry,

16   washing dishes, yard work, erecting a pool for his children, building a fence,

17   playing video games with his son for hours at a time, carving wood, drawing,

18   gardening, canning, camping, and fishing.  Tr. 69-72, 298, 328, 331, 333, 345.

19   Most notably, in contrast to Ms. Spitler's opinion that Plaintiff's inability to leave

20   his home would "severely impact his ability to hold a job;" Plaintiff was able to

1   complete training to get his CDL and then work as a truck driver during the

2   adjudicatory period.  Tr. 45-46.  In addition, despite Ms. Champoux's opinion that

3   Plaintiff had "difficulty being around larger number of people;" the record

4   indicates that Plaintiff has a fiancée he sees every day, has driven his son to and

5   from school, occasionally visits a friend, attends school events with his children,

6   goes to church, and has driven an 18-wheeler cross-country.  Tr. 46, 80-81, 299,

7   325.  This conflict between Plaintiff's reported activities and the opinions of Ms.

8   Spitler and Ms. Champoux was a germane reason, unchallenged by Plaintiff, to

9   grant little weight to those opinions.

10        For all the foregoing reasons,[4] the Court finds the ALJ gave specific and

11  germane reasons for granting "little weight" to Ms. Spitler and Ms. Champoux's

12  opinions.

13

14

15

_____

16  [4] While it is unclear whether it was offered as reason to reject their opinions, the

17  ALJ also noted that "the ultimate determination of 'disability' is an issue reserved

18  for the Commissioner."  Tr. 27.  The Court declines to address this issue as neither

19  party raised it with specificity in their briefing.  *See Carmickle*, 533 F.3d at 1161

20  n.2.

## C. RFC and Hypothetical

First, Plaintiff contends that the ALJ erred at step four by failing to account for Plaintiff's alleged "anger issues" in the RFC. ECF No. 14 at 16-20. However, Plaintiff's argument is based on the assumption that the ALJ erred in considering the medical opinion evidence and Plaintiff's testimony. As discussed in detail above, the ALJ's evaluation of the medical opinions, and the ALJ's adverse credibility finding, were legally sufficient and supported by substantial evidence. Second, Plaintiff argues the ALJ "ignored" the following testimony from the vocational expert ("VE") upon questioning by Plaintiff's counsel:

> COUNSEL: Assume we have an individual of the claimant's age, education, and past relevant work experience, and further assume that this individual, when involved in normal work, would become angry and threatening, particularly having problems with supervisors, the public, and coworkers. Is that type of attitude accepted in either the past work of this claimant or other work in the regional or national economy?
>
> VE: It is my opinion that employers could – would not tolerate that type of outburst, angry outburst or physical altercations to a supervisor, coworker, or to the public. A minor infraction, if someone got upset, maybe had left, but didn't engage in an altercation, there might be a three-step process before they're terminated. But if someone physically assaults someone or there's an angry outburst that is threatening, then an employer will likely no longer maintain that employment.

ECF No. 14 at 18 (citing Tr. 92). The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record which reflect all of a claimant's limitations. *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). However, the ALJ is not bound to accept as true the restrictions presented

1  in a hypothetical question propounded by a claimant's counsel.  *Id.* at 1164;

2  *Magallenes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*,

3  807 F.2d 771, 773 (9th Cir. 1986).  The ALJ is free to accept or reject these

4  restrictions as long as they are supported by substantial evidence, even when there

5  is conflicting medical evidence.  *Magallenes*, 881 F.2d at 756-57.  Here, the ALJ

6  was not required to include a limitation regarding Plaintiff's alleged "anger

7  issues," propounded by Plaintiff's counsel, as it was based on Plaintiff's own

8  properly discredited statements and rejected medical opinion evidence.  *See id*. at

9  751 (ALJ is responsible for reviewing the evidence and resolving conflicts or

10  ambiguities in testimony).  Thus, the ALJ did not err at step four.

## CONCLUSION

12      Having reviewed the record and the ALJ's findings, this Court concludes the

13  ALJ's decision is supported by substantial evidence and free of harmful legal error.

14  **ACCORDINGLY, IT IS HEREBY RECOMMENDED:**

15      1.  Plaintiff's Motion for Summary Judgment, ECF No. 14, be **DENIED**.

16      2.  Defendant's Motion for Summary Judgment, ECF No. 17, be

17      **GRANTED**.

## OBJECTIONS

19      Any party may object to a magistrate judge's proposed findings,

20  recommendations or report within **fourteen (14)** days following service with a

copy thereof.  Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor.  Any response to the objection shall be filed within **fourteen (14)** days after receipt of the objection.  Attention is directed to FED. R. CIV. P. 6(d), which adds additional time after certain kinds of service.

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject or modify the magistrate judge's determination.  The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon.  The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions.  *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMR 4, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

1    The District Court Executive is directed to enter this Report and

2 Recommendation, forward a copy to Plaintiff and counsel, and **SET A CASE**

3 **MANAGEMENT DEADLINE ACCORDINGLY.**

4    DATED December 14, 2016.

5                                    s/Mary K. Dimke
                                     MARY K. DIMKE
6                                    UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20